IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ALEXIS MONTGOMERY,

        Plaintiff,

vs.

Case No. 07-2227-JTM

SPRINT SPECTRUM, L.P., a subsidiary of
SPRINT NEXTEL CORPORATION d/b/a
SPRINT PCS,

        Defendant.

MEMORANDUM AND ORDER

This matter is before the court on defendant Sprint Spectrum's Motion to Dismiss. Sprint argues that the present claim is barred by an earlier settlement, and that the additional claims raised by plaintiff Alexis Montgomery are also without merit. For the reasons stated herein, the defendant's motion will be granted.

Montgomery, a Texas resident, filed her Class Action Petition on April 13, 2007 in the District Court for Johnson County, Kansas, Case Number 07-cv-2931. Sprint timely removed that action to this court on May 25, 2007. Montgomery's Petition alleges that Sprint has been and is deceptively and improperly charging her as a Sprint wireless telephone customer a "Texas Margin Fee Reimbursement" since January 2007. The purpose for the Reimbursement is to obtain reimbursement for a Texas franchise tax.

Montgomery further alleges that a contract governs the relationship between herself and Sprint, and attaches as an exhibit to her Petition a partial copy of her invoice from Sprint, referencing the included "SPRINT PCS Terms and Conditions of Service." Petition ¶¶ 10-11. Those Terms state:

> The Subscriber Agreement ("Agreement") is a contract under which we provide and you accept our Services. In addition to these Terms and Conditions of Service ("Ts&Cs"), there are several parts to the Agreement including, but not limited to, the detailed plan or other information on Services we provide or refer you to during the sales transaction, and any confirmation materials we may provide you.

(Def. Exh. 2). Montgomery also alleges Sprint violated the Texas Deceptive Trade Practices Act ("DTPA") by "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." Petition at ¶ 22.

Montgomery brought her First Claim under the DTPA, alleging that Sprint violated, and continues to violate, various provisions of the DTPA. *Id*. ¶¶ 20-22. She alleged in her second claim that Sprint's collection of the Reimbursement fee was a violation of the Kansas Consumer Protection Act ("KCPA") as "unlawful, deceptive and unfair." Montgomery alleges that the Reimbursement is collected "under the pretense that the State of Texas has imposed this fee on the consumers of Texas or somehow endorsed SPRINT's decision to impose the fee." Petition at ¶ 24. She also alleges that Sprint violated the KCPA because "SPRINT's use of '1%' with regard to the 'Margin Fee' causes confusion, as it implies that there is a precise amount which is due from the consumer, when in fact . . . this 1% is based on an estimate of what SPRINT wants to collect from consumers in anticipation of the amount it will eventually be required to pay in 2008." *Id*. ¶ 25. In her Third Claim, Montgomery alleges Sprint has been unjustly enriched by its collection of the Margin Fee Reimbursement. *Id*. ¶ 32. Montgomery stated that she brought these claims on behalf of "all

2

customers in Texas of Defendant who have been charged a 1% Texas Margin Fee Reimbursement by Defendant, except Defendant herein and any person, firm, trust, corporation, or other entity related to or affiliated with the Defendant, who will be threatened with injury arising from Defendant's actions as are described more fully below." *Id*. at ¶ 35.

Beginning in 2002, Sprint was named as a defendant in a number of class action lawsuits around the country concerning Sprint's charges to wireless customers to recover, by billing surcharges, amounts that Sprint is required to pay to governmental entities or to fund government mandated programs.  These cases included *Benney v. Sprint Spectrum, L.P.* in Cole County, Missouri, and *Lundberg and Barnes v. Sprint Corp.*, in the District Court of Wyandotte County, Kansas.  The plaintiff in *Lundberg* was represented by the same attorneys who now represent Montgomery.

The *Benney* and *Lundberg* cases were consolidated in the District Court of Wyandotte County, Kansas, along with cases from other jurisdictions. After both formal and informal discovery and lengthy settlement negotiations, including formal mediation meetings conducted before a retired judge, Sprint and plaintiffs in the *Benney/Lundberg* cases entered into the Settlement Agreement, signed on February 24, 2006.  On February 28, 2006, the Wyandotte County District Court issued an Order of Preliminary Approval of the Settlement Agreement.  In that Order, the court appointed plaintiffs' counsel in *Benney/Lundberg* as class counsel for two overlapping classes that included all current and past (for a period of several years) Sprint wireless customers nationwide. Plaintiffs' class counsel was led by Edward D. Robertson, former Chief Justice of the Missouri Supreme Court, and included Montgomery's current counsel.

Under the Order, Sprint provided notice of the *Benney/Lundberg* settlement to its current customers by bill insert, and provided notice to its former customers via post card, informing recipients of website and toll-free number references to obtain additional information and forms. Sprint also published notice of the *Benney/Lundberg* settlement in the *Wall Street Journal*, *USA Today*, *Vista*, and the national newspaper supplement *Parade* magazine. In addition, plaintiffs' counsel maintained a website (www.sprintclassactionsettlement.com) and toll-free number for potential claimants to obtain additional information and forms relating to the settlement.

At the time of the final approval hearing, approximately 425,000 class members submitted claim forms to receive benefits pursuant to the *Benney/Lundberg* settlement. Only 103 class members made objections, and an even smaller number -- 20 -- exercised their right to opt out of the settlement. The Wyandotte County District Court held a final approval hearing on September 12, 2006. A number of objectors appeared, including several that had alleged putative class actions in other forums. The court approved the Settlement Agreement in an order signed November 8, 2006.

A handful of objectors initially appealed the order. The final appeal by an objector was dismissed on March 8, 2007.

The *Benney* Settlement Class consists of "all current and former Sprint wireless customers in the United States who were customers for any time during the period December 1, 2000 to the Effective Date, and who were charged Regulatory Fees as defined in paragraph 1.3(a)." Settlement Agreement, ¶ 7(a), p. 14.  The "Effective Date" is defined at ¶ 1.7 of the Settlement Agreement, as the date after a final order when the order is no longer subject to further appeal or review. In this case, that date was triggered when the final appeal by an objector was dismissed on March 8, 2007.

The *Lundberg* Settlement Class consists of "all current and former Sprint wireless customers in the United States who were customers at any time during the period January 1, 1997 to the Effective Date, and who could have asserted claims relating to directory assistance calls, Sprint's practice of rounding minutes up to the next whole minute, and Coverage and Capacity Issues." *Id*. at ¶ 7(b), pp. 15-16.  Paragraphs 22(a)(1) and (2) state that claims such as those raised by Montgomery relating to Sprint's charging of a surcharge to recover government fees are encompassed in the settlement, and that the releases given by the class were specifically given "[a]s of the Effective Date" (March 8, 2007):

> 22(a)(1). Release. As of the Effective Date, the *Benney* Class Plaintiffs, on their own behalf and on behalf of all Settlement Class Members who do not properly opt out of the proposed Settlement Classes under K.S.A. 60-223, release and discharge Sprint (and its/their parents, subsidiaries, affiliates, predecessors, successors, and assigns, and each of their past, present and future officers, directors, employees, agents, representatives, attorneys, heirs, administrators, executors, predecessors, successors and assigns) (collectively, the "Releasees"), from any and all claims, demands, debts, liabilities, actions, causes of action of every kind and nature, obligations, damages, losses, and costs, whether known or unknown, actual or potential, suspected or unsuspected, direct or indirect, contingent or fixed, that have been, could have been, or in the future might be asserted in the Actions or in any other court or proceeding which relate in any way to allegations that, on or before the Effective Date, Defendants failed properly to disclose or otherwise improperly charged for surcharges, regulatory fees or excise taxes, including but not limited to the Regulatory Fees; and all other causes of action; claims; damages; equitable, legal, and administrative relief; interest; demands; or rights, whether presently known or unknown, whether based on facts in addition to or different from those which they now know or believe to be true, or whether based on federal, state, or local statute or ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be, or could be alleged or asserted by any Class member, either directly or indirectly, on their own behalf, on behalf of the Class, or on behalf of any other person, against the Releasees relating to, on the basis of, in connection with, or arising out of, in whole or in part, the subject matter of any of the claims alleged in the *Benney* Action. All Class Members expressly waive any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims, including, without limitation, California Civil Code Section 1542, which otherwise provides that "A general release does not extend to claims

which the creditor does not know or suspect exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor," or under any other law or principle of common law of any State or territory of the United States, or of any foreign country, that is comparable or equivalent in substance or intent to California Civil Code Section 1542.

*Id*. at 30-31.

The release in the *Benny/Lundberg* Settlement provided:

22(a)(2) Release. As of the Effective Date, the *Lundberg* Class Plaintiffs, on their own behalf and on behalf of all Settlement Class Members who do not properly opt out of the proposed Settlement Classes under K.S.A. 60-223, release and discharge Sprint (and its/their parents, subsidiaries, affiliates, predecessors, successors, and assigns, and each of their past, present and future officers, directors, employees, agents, representatives, attorneys, heirs, administrators, executors, predecessors, successors and assigns) (collectively, the "Releasees"), from any and all claims, demands, debts, liabilities, actions, causes of action of every kind and nature, obligations, damages, losses, and costs, whether known or unknown, actual or potential, suspected or unsuspected, direct or indirect, contingent or fixed, that have been, could have been, or in the future might be asserted in the Actions or in any other court or proceeding which relate in any way to allegations that, on or before the Effective Date, Defendants failed properly to disclose or otherwise improperly charged for surcharges, regulatory fees or excise taxes, including but not limited to the Regulatory Fees; for directory assistance calls; the practice of rounding minutes up to the next whole minute; offered service without properly disclosing limitations on the coverage, capacity, and geographic scope of the Sprint PCS wireless network (including, but not limited to, the availability or claimed necessity of software upgrades to phone handsets); Coverage and Capacity Issues; dropped customer calls; failed to connect customer calls; and all other causes of action; claims; damages; equitable, legal, and administrative relief; interest; demands; or rights, whether presently known or unknown, whether based on facts in addition to or different from those which they now know or believe to be true, or whether based on federal, state, or local statute or ordinance, regulation, contract, common law, or any other source, that have been, could have been, may be, or could be alleged or asserted by any Class member, either directly or indirectly, on their own behalf, on behalf of the Class, or on behalf of any other person, against the Releasees relating to, on the basis of, in connection with, or arising out of, in whole or in part, the subject matter of any of the claims alleged in the *Lundberg* Consolidated Action. All Class Members expressly waive any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims, including, without limitation, California Civil Code Section 1542, which otherwise provides that "A general release does not extend to claims which the creditor does not know or suspect

exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor," or under any other law or principle of common law of any State or territory of the United States, or of any foreign country, that is comparable or equivalent in substance or intent to California Civil Code Section 1542.

*Id*. at 31-32.  Paragraph 22(b) also stated that class members who do not opt out waive all claims, including claims unknown at the time of the settlement:

> Each Class Plaintiff and Settlement Class member is aware and understands that he or she may hereafter discover[] claims presently unknown or unsuspected, or facts other than or different from those which he or she knows or believes to be true with respect to the matters released herein, which if known by him or her, might have affected his or her decision to grant the Release contained in this Agreement. Nevertheless, it is the intention of each Class Plaintiff and Settlement class member to have expressly waived and fully, finally and forever settled and released any known or unknown, suspected or unsuspected, contingent or noncontingent claim with respect to the matters released herein, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

*Id*. at 34.

The November 8, 2006 Order approving the settlement provided:

> 46. Sprint is hereby released and discharged from any liability to each and every Benney Class Plaintiff and Settlement Class members, with the sole exception of those Settlement Class members who timely excluded themselves from the class by filing a request for exclusion by the deadline set by the Court, arising from or relating to any and all claims that were or could have been alleged in the Benney matter, including but not limited to claims which relate in any way to allegations that, on or before the Effective Date as defined in the Settlement Agreement, Sprint failed properly to disclose or otherwise improperly charged for surcharges, regulatory fees or excise taxes, including but not limited to the Regulatory Fees, as set forth in Paragraph 22(a)(1) of the Settlement Agreement.

> 47. Sprint is hereby released and discharged from any liability to each and every Lundberg Class Plaintiff and Lundberg Settlement Class member, with the sole exception of those Settlement Class members who timely excluded themselves from the class by filing a request for exclusion by the deadline set by the Court, arising from or relating to any and all claims that were or could have been alleged in the Lundberg matter, including but not limited to claims that, on or before the Effective

> Date, Sprint failed properly to disclose or otherwise improperly charged for surcharges, regulatory fees or excise taxes, including but not limited to the Regulatory Fees; for directory assistance calls; the practice of rounding minutes up to the next whole minute; offered service without properly disclosing limitations on the coverage, capacity, and geographic scope of the Sprint PCS wireless network (including, but not limited to, the Page 9 of 19 10 availability or claimed necessity for software upgrades to phone handsets); Coverage and Capacity Issues; dropped customer calls; or the failure to connect customer calls, as set forth in Paragraph 22(a)(2) of the Settlement Agreement.

*Id*. at ¶ 47.

In its motion for dismissal, Sprint argued that the present claims — which allege that Sprint's "unlawful, deceptive, and unfair" collection of the Margin Fee Reimbursement is covered by the Settlement Agreement and Order in *Benny/Lundberg*. It further argued that the release was not overly broad and could not be collaterally attacked in the present proceeding. In her response, plaintiff argues only that the prior release did not affect any claims arising after March 8, 2007, the date the settlement was approved by the court. It also suggests that there are questions of fact as to claims between January 1, 2007 (when the Margin Reimbursement Fee was first collected) and March 8, 2007.

It is clear that the challenged Margin Reimbursement Fee is covered by the prior settlement's release of all claims related to "surcharges" and "regulatory fees." Plaintiff Montgomery released all other claims then existing, including those presented here. Specifically, she "expressly waived and fully, finally and forever settled and released any known or unknown, suspected or unsuspected, contingent or non-contingent ... claims which relate in any way to allegations that, on or before [March 8, 2007], Sprint failed properly to disclose or otherwise improperly charged for surcharges [or] regulatory fees." Sprint began collecting the Margin Reimbursement fee prior to March 8, 2007. The settlement makes no exception for damages which may later accrue; it releases the entire claim

as it relates to any surcharge or regulatory fee charge. Not only is plaintiff's argument contrary to the letter of the Settlement Agreement, it would also render the entire Agreement pointless. A clear purpose of the Agreement was to allow Sprint to continue to collect fees for future reimbursements. Montgomery's present argument and the present litigation would thwart this basic purpose of the Agreement. Her current claim is encompassed by the Settlement Agreement and it was previously released. The court finds no reason for delay in granting Sprint the relief sought.

Sprint also argues that the KCPA claim should be dismissed. Montgomery contends that a KCPA claim may be validly advanced here because the Terms and Conditions specified that Kansas law should be used in interpretation of the contract. Montgomery's argument is without merit because, whatever the agreement between the parties, it cannot create a KCPA violation where the statute itself establishes it has no application. Specifically, the KCPA applies to consumer transactions which occur "within this state." K.S.A. 50-624. Here, a Texas resident is suing for a surcharge seeking to recover for a Texas regulatory fee which was applied to her Texas telephone bill for services that were delivered to her in Texas. Plaintiff has supplied no authority for an interpretation of the KCPA in such an extraterritorial fashion. The KCPA is not intended to serve as a nationwide basis for liability against Kansas companies, based solely upon their presence in this state, when the actual consumer transaction does not occur here. The court holds that the KCPA will be dismissed.

Finally, dismissal is also appropriate as to Montgomery's unjust enrichment claim. Such a claim is without foundation where the relations between the parties are independently governed by an express contract. *Member Svcs. Life Ins. v. American Nat. Bank & Trust*, 130 F.3d 950, 957 (10th Cir. 1997) (quasi-contract remedies "are not to be created when an enforceable express contract

regulates the relations of the parties"); *ICE Corp. v. Hamilton Sundstrand, Inc.*, 444 F.Supp.2d 1165, 1171 (D. Kan. 2006) (dismissing unjust enrichment claim as barred in light of express contract); *Britivic Soft Drinks v. Acsis Tech.*, No. 01-223-CM, 2004 WL 1900584, *2 (D. Kan. June 8, 2004).

IT IS ACCORDINGLY ORDERED this 6th day of November, 2007 that the defendant's Motion to Dismiss (Dkt. No. 5) is hereby granted.

s/ J. Thomas Marten<br>J. THOMAS MARTEN, JUDGE